VIRGINIA:

IN THE CIRCUIT COURT OF THE COUNTY OF PRINCE WILLIAM

VIRGINIA STATE BAR, EX REL
FIFTH DISTRICT COMMITTEE
VSB Docket Nos. 19-053-114672
      20-053-117461
      20-053-117932

  Complainant

v.                Case No. CL21-5760

JONATHON ALDEN MOSELEY
5765-F Burke Centre Parkway, #337
Burke, VA 22015
  Respondent.

## FINAL JUDGMENT MEMORANDUM ORDER

THIS MATTER, originally scheduled to be heard on October 14 and 15, 2021, and continued sua sponte, was heard on March 31 and April 1, 2022 by a Three-Judge Circuit Court duly impaneled pursuant to Section 54.1-3935 of the Code of Virginia (1950) as amended, consisting of the Honorable Phillip L. Hairston, Judge of the 13th Judicial Circuit, the Honorable Richard S. Wallerstein, Jr., Judge of the 14th Judicial Circuit, and the Honorable Susan L. Whitlock, Retired Judge of the 16th Judicial Circuit and designated Chief Judge ("Chief Judge") of the Three-Judge Circuit Court (collectively "the Court").

Laura Ann Booberg and Paulo E. Franco represented the Virginia State Bar ("VSB"). Respondent, having received proper notice of the proceeding, appeared *pro se*.

The Chief Judge swore the court reporter, and each member of the Court verified that he or she had no personal or financial interest that might affect or reasonably be perceived to affect his or her ability to be impartial in this matter.

WHEREUPON a hearing was conducted upon the Rule to Show Cause issued against Respondent. The Rule directed Respondent to appear and to show cause why his license to practice law in the Commonwealth of Virginia should not be suspended, revoked, or otherwise sanctioned by reason of the allegations of ethical misconduct set forth in the Certification issued by a subcommittee of the Fifth District Committee, Section III, of the VSB.

## Misconduct Phase

Pursuant to the Pre-Hearing Order entered August 25, 2021, and the Rules of the Supreme Court, Part Six, Section IV, Paragraph 13-12.D, the Court admitted VSB Exhibits 1-111(A) into evidence. Respondent did not timely file objections to any VSB exhibits. Respondent did not file any exhibits pre-hearing.

Both parties made opening statements.

The Court received the testimony of the following witnesses for the VSB:

Ronald H. McCall

Robert Vaughn, Esq.

The VSB then rested. Respondent testified in his case. Respondent did not call any other witnesses. The Court received Respondent's Ex. 1, a complete copy, with exhibits, of his Complaint filed in the EDVA, dated October 28, 2020, Ex. 2, an Affidavit of Robert Vaughn, Esq., and a bench brief.

Both parties made closing statements.

Upon due deliberation and consideration of the parties' Stipulations, exhibits, and witness testimony, the Court made the following findings of fact by clear and convincing evidence:

**VSB Docket No. 19-053-114672**
**Complainant: Parvis Salehi**

1. Respondent was admitted to the VSB on April 23, 1997. At all relevant times, Respondent was a member of the VSB.

2. On November 7, 2018, Complainant Parvis Salehi ("Salehi") hired Respondent to represent him. Salehi signed a Legal Services Agreement retaining Respondent to collect on a loan. The Agreement stated, "As an advance deposit toward payment of the Attorney's fees and expenses, Client shall pay a deposit of $1,500.00 at the start of Attorney's work for the Client, consisting of an estimated $1,250.00 for legal work and up to $250.00 for expenses that maybe required..." VSB Ex. 8

3. Salehi paid Respondent a $1,250 advance fee via check no. 6470 dated November 7, 2018. Respondent deposited the funds into a Wells Fargo non-trust account on November 16, 2018. Respondent testified at the hearing that the Wells Fargo account was the only open account he had on November 18, 2018, and that the account contained personal funds. As of December 24, 2018, the balance in the Wells Fargo account was zero. VSB Exs. 6, 10 and 13.

4. Initially, Respondent was engaged in Salehi's case and communicating with him. On December 5, 2018, after Salehi became dissatisfied with Respondent's communication, Salehi terminated the representation and asked that Respondent provide him with a refund by December 14, 2018. When Respondent did not provide the refund, Salehi filed a bar complaint with the VSB. VSB Exs. 14, 16 and 6.

5. After the bar complaint was filed, Respondent re-engaged with Salehi and successfully collected the debt. Salehi was satisfied and, on December 23, 2018, notified the VSB that he wanted to withdraw his bar complaint.[1] Respondent testified that he did not inform Salehi that he had comingled Salehi's unearned funds into his personal account, nor that Respondent spent the funds by December 24, 2018.

6. On or about February 12, 2019, Respondent opened a trust account. Respondent deposited a check for $1,250.00 which consisted of a check from another client, Jon Wolff, for $1,200 and $50 cash. Respondent listed these deposits on his firm ledger as "deposit from Parvis Salehi." VSB Exs. 12, 13 and 23.

7. On March 7, 2019, the VSB issued a subpoena *duces tecum* to Respondent for production of his file, including trust account records and bank records showing

---

[1] Part Six, Section IV, Paragraph 13-10. B provides that, "No complaint or allegation of Misconduct shall be dismissed at any stage of the process solely upon a request by a Complainant to withdraw his or her complaint."

3

the deposit of Salehi's check. The subpoena specifically sought, among other things:

> All trust account and operating account records, including all paper and electronically stored records, including cancelled checks, cash receipts journals, cash disbursements journals, individual client subsidiary ledgers, bank statements, deposit tickets and evidence of reconciliations; that are in your possession, custody or control, relating to your representation of Parvis Salehi.

VSB Ex. 28.

8. On or about April 1, 2019, Respondent submitted a partial response to the subpoena. After reviewing it, VSB Investigator Ronald H. McCall ("Investigator McCall") determined that Respondent did not provide all billing, trust, operating account records, bank statements or deposit tickets relating to Salehi, because Respondent only provided a copy of Salehi's check. Investigator McCall asked Respondent to supplement his response with the missing items. VSB Exs. 101 and 29.

9. On October 9, 2019, the VSB sent a letter to Respondent by regular mail and email advising him that he had until October 21, 2019, to provide the documents required to be produced by subpoena duces tecum. VSB Ex. 30.

10. On October 30, 2019, after Respondent failed to respond to numerous requests for these non-produced records, the VSB filed a Notice of Noncompliance with the Virginia State Bar Disciplinary Board ("the Board"), a copy of which was properly served on Respondent via certified mail. The Notice of Noncompliance put Respondent on notice that if he did not fully respond to the subpoena or petition the Board for a hearing within 10 days, the Board would issue an order suspending his license to practice law in the Commonwealth of Virginia. VSB Ex. 30.

11. Respondent did not fully respond to the subpoena or petition the Board to withhold entry of an interim suspension order within 10 days of service of the Notice of Non-Compliance, and, 19 days later, his license was administratively suspended on November 19, 2019. VSB Ex. 31.

12. On November 20, 2019, Respondent filed a "Notice of Full and Complete Compliance Motion for Dismissal and Request for Stay any [sic] Adverse Action or Interim Suspension and Request for Hearing Before Three Judge Panel." In this motion, he stated that he had provided everything sought by the subpoena. He failed to disclose in the filing his failure to provide billing records, operating account records, bank statements and/or deposit tickets. VSB Ex. 34.

4

13. Between November 20, 2019 and December 9, 2019, Respondent exchanged numerous emails with the VSB, repeatedly claiming that the subpoena sought documents that did not exist. He also claimed that he had provided the VSB with everything that existed in the file as of March 7, 2019, the date of the subpoena. VSB Exs. 34-76. Among those were the following emails:

- November 22, 2019 – Respondent stated, "I had one check at the beginning of the case which was deposited in my trust account for $1,250." VSB Ex. 40.

- November 26, 2019 – Respondent stated, "But your representation to the Disciplinary Board that I did not comply with the March 7, 2019 subpoena is lacking in candor...I trust you will act accordingly, and promptly." VSB Ex. 43.

- November 26, 2019 – "There was one check for $1,250 from Mr. Parvis Salehi. You already received from Mr. Parvis Salehi a copy of that check. You received another copy of that check from me sent on March 27, 2019. That one check was deposited." VSB Ex. 44.

- November 26, 2019 – "It would not make sense for me to keep a cash journal or anything of the sort...Even after a graduate year in accounting, I don't know what documentation that would be other than having a video camera filming me do it." VSB Ex. 46.

- November 27, 2019 – "The Bar's Notice of Non-compliance is lacking in candor, not grounded in fact or law." VSB Ex. 47.

- December 5, 2019 – "Thus the issue is not whether I complied with the subpoena – which I did – but whether Ron McCall and Laura Booberg wish they had other, further documents than those that existed as of March 7, 2019." VSB Ex. 70.

14. On December 9, 2019, even though Respondent did not timely ask for a hearing to determine compliance with the subpoena, VSB Disciplinary Board Chair Sandra Havrilak conducted a telephone hearing to determine Respondent's compliance with the subpoena. VSB Ex. 77.

15. In advance of the hearing, Respondent sent 744 pages of documents in support of his position that he had provided the VSB with every document that existed as of March 7, 2019. Included in the 744 pages were:

5

- "List of Tasks and Transactions" showing transactions from November 5, 2018 through October 29, 2019 that listed a trust account balance for Parvis Salehi of $1,250 beginning November 15, 2018. VSB Ex. 16.

- "Attorney Escrow Account Activity" showing bank posting dates from February 1, 2019 through April 1, 2020 in which Respondent listed a deposit from Parvis Salehi posted by the bank on February 12, 2019. VSB Ex. 20, Bates 142.

- "Balance Sheet" showing a February 12, 2019 deposit of $1,250 for Parvis Salehi. VSB Ex. 21.

These documents were created to conceal the fact that Respondent did not place Salehi's unearned funds in a trust account and spent the unearned funds for Respondent's own use.

16. During the December 9, 2019, telephone hearing, Respondent revealed for the first time that on November 16, 2018, he did not have a trust account. Respondent admitted that he instead deposited the Salehi funds into a non-trust account and used them for his personal expenses. He stated:

    - "When I went to deposit the thing in November, I found that they had closed my account because it reached a zero balance."

    - In response to Chair Havrilak asking Respondent, "Are you saying you just put it in your pocket?" Respondent stated, "I—I waited until, I guess, SunTrust worked out, yes. But again, that's – there are no records of an account in November because it was closed."

    VSB. Ex. 77.

17. After hearing this evidence, Chair Havrilak denied Respondent's motion until such time as Respondent produced the bank statement and/or deposit slip showing where the Salehi check was deposited. Directly after the hearing, Respondent went to the bank, obtained the records showing the deposit of the Salehi check into his non-trust account at Wells Fargo and the suspension of his license was lifted effective December 9, 2019. VSB Ex. 78.

18. Respondent produced billing records and invoices showing that the Salehi fee was not fully earned until April 2019, proving that Respondent converted the unearned Salehi funds for his own use. VSB Ex. 16.

6

19. As noted above in paragraphs 6-9 which are incorporated herein, on November 19, 2019, the Disciplinary Board entered an Interim Suspension Order arising from Respondent's failure to comply with a subpoena *duces tecum* issued on March 7, 2019. Respondent was administratively suspended from November 19, 2019 to December 9, 2019. VSB Ex. 31.

20. On December 11, 2019, the VSB received the following information from Judge Gardiner of Fairfax Circuit Court:

    > Please notify the appropriate State Bar staff that Mr. Moseley appeared before me on November 20, 2019 on the 10 a.m. docket as counsel for the plaintiff in *Mijares v. Solution Painting Inc, et al,* CL 2019-8311. After a motion to dismiss was made by defendants' counsel, which Mr. Moseley argued against, the case was dismissed. Attached is the Order in the case, which Mr. Moseley endorsed as counsel for the plaintiff. At no time did Mr. Moseley indicate to me that he had been suspended the previous day.

21. Respondent contended, and testified before the Three-Judge Panel, that he was not aware of his suspension until after he appeared in court on November 20, 2019.

22. Respondent participated in the hearing and Judge Gardiner dismissed the case with prejudice. According to Respondent, when he got out of court, he returned to his office and tried to log onto Fastcase on the VSB website to research the issue of judicial estoppel, but he was unable to log in. He then learned through the VSB website that he was suspended.

23. On November 26, 2019, Robert L. Vaughn, Esq. ("Vaughn") reported to the VSB that Respondent appeared via telephone at Calendar Control before Judge Mann in Fairfax Circuit Court on November 25, 2019. Respondent testified that he was present on the call as a courtesy to opposing counsel Vaughn and that he did not take a position on opposing counsel's request.

24. Respondent also testified that he mentioned to Judge Mann that he had a "temporary issue with the bar" and that he didn't want to schedule anything right away. Vaughn testified unequivocally that Respondent did not mention his suspension to Judge Mann.

25. On December 6, 2019, in an apparent attempt to comply with the notice requirements of Paragraph 13-29, Respondent sent a "Notice of Counsel of Temporary Suspension" to the Supreme Court of Virginia and the Prince William County General District Court. Respondent stated that he:

7

> ...provide[d] notice that in spite of Jonathon Moseley's full and complete compliance with the subpoena duces tecum on March 27, 2019, with a March 7, 2019 subpoena duces tecum from the Virginia State Bar and the relevant client's withdrawal and repudiation of his initial complaint and counsel and Mr. Moseley's very extensive work for the same client after a full and complete compliance with the subpoena duces tecum on March 27, 2019, nevertheless the Virginia State Bar filed a notice with the Disciplinary Board for a suspension for not providing documents that Mr. Moseley does not have. In substance and effect, Bar Counsel demands that counsel provide documents which do not exist, apparently asking counsel to create documents that were not in existence at the time of the subpoena.

VSB Ex. 81.

26. In a similar notice sent to the Loudoun County General District Court on December 4, 2019, Respondent stated that the Disciplinary Board was "mislead [sic]" into entering an interim suspension order. VSB Ex. 81.

27. On January 15, 2020, Judge Gardiner granted a motion for sanctions filed by Vaughn. Judge Gardiner entered an order awarding Vaughn attorney's fees and costs based on Respondent's and his client's failure to truthfully answer an interrogatory question. Judge Gardiner also found that based on Respondent's suspension, the November 20, 2019 order was void. VSB Ex. 80.

28. On June 5, 2020, Respondent filed a 97 paragraph Memorandum of Points and Authorities in support of his Motion to Vacate Under 8.01-428 Legally Void Order of January 15, 2020. Beginning at paragraph 38, Respondent described the "unfounded dispute" that lead to his interim suspension. He repeated his false assertion that the VSB "contended that they should have received documents that do not exist because they thought that they should have existed, even though Moseley told them that he would not create a non-existent document." VSB Ex. 83.

29. On June 9, 2020, Respondent filed "Plaintiff's Opposition to Rule to Show Cause of Contempt of Order of January 15, 2020," in which he repeated his false assertion that "the VSB continued its unfounded dispute over the documents that Moseley had sent on March 27, 2019 and had administratively suspended Moseley for the VSB's suspicions that there could be other documents not provided under its March 2019 subpoena duces tecum." VSB Ex. 84.

30. The court addressed the Rule to Show Cause and Respondent's opposition in a June 12, 2020 hearing, which, due to COVID-19 restrictions, was held virtually. VSB Ex: 86.

8

31. After taking the matter under advisement, Judge Gardiner, in a July 16, 2020, letter opinion, found Respondent in contempt for failing to comply with the court's Order of January 15, 2020 imposing sanctions of $6,995. Judge Gardiner further held that Respondent could purge the contempt by paying the sanctions within 20 days. Judge Gardiner declined to suspend Respondent from practice before his court, "as the Virginia State Bar [was] investigating his appearances before this court." VSB Ex. 87.

32. On August 11, 2020, when Respondent did not pay the sanction within 20 days, Judge Gardiner issued a Rule to Show Cause requiring Respondent to appear on August 20, 2020.

33. On August 20, 2020, instead of appearing at the Show Cause proceeding, Respondent filed a Writ of Prohibition in the Supreme Court of Virginia and delivered it to the Court that morning. Respondent sought a writ directed at Judge Gardiner, Vaughn and his client, Solution Painting, ordering the circuit court to cease pursuing collection of the sanctions through its contempt order. Although Respondent filed the action against Judge Michael Gardner, Judge Richard Gardiner responded to the action, thus submitting himself to the jurisdiction of the Supreme Court. VSB Ex. 88.

34. When Respondent did not appear at the Show Cause proceeding on August 20, 2020, Judge Gardiner issued a capias for Respondent's arrest, and he was jailed for six days.

35. On September 18, 2020, the Supreme Court found that the Writ of Prohibition did not lie to direct Judge Gardiner to cease employing the court's contempt powers to collect the January 15, 2020 sanctions because the circuit court has jurisdiction to enter contempt orders. The Court further found that the Writ of Prohibition cannot be used to direct the actions of non-court entities such as Solution Painting. VSB Ex. 88.

36. On October 21, 2020, Respondent filed, in the US District Court for the Eastern District of Virginia, a Sworn and Verified Complaint Against Conspiracy to Violate Civil Rights and Companion Request to Certify a Class Action. He filed the action against Judge Michael Gardner, Robert Vaughn and Solution Painting Inc. As the lead plaintiff, Respondent requested certification of a class action on behalf of all persons who have been found by a judgment or order of the Fairfax County Circuit Court to owe money or a debt. VSB Ex. 89. Throughout the Complaint, Respondent made various inflammatory and false allegations against Judge Gardiner and Vaughn, including the following:

  • "The original debt was illegal under Virginia law."

9

- "Judge Michael Gardiner is apparently only the second judge in Virginia to have violated the 13th Amendment to the U.S. Constitution which prohibited slavery and involuntary servitude, acting outside of his jurisdiction and authority by violating the U.S. Constitution to the United States."

- "Although done in the name of Solution Painting, it is evident that Robert Vaughn's delusional obsession with breaking the law is his own unlawful crusade which Solution Painting on its own would not understand or choose to pursue."

- "Defendants have acted jointly and in concert in taking official government action through the Fairfax Circuit Court."

- "The Defendants may be misled by deluded speculation that they can extort money from Plaintiff's family…"

- "As such, the January 15, 2020 [sic], must be interpreted as a purely precatory, aspirational hope, suggestion, or wish, or perhaps a morally persuasion [sic] suggestion, and not an actual court judgment of any debt owed."

- "…The Defendants and each of them acted willfully and intentionally to violate Plaintiff's civil and constitutional rights and/or with reckless disregard of whether their conduct violated the Plaintiff's civil and constitutional rights."

- "The very purpose and object of the defendants' actions are to terrorize the Plaintiff into paying money that the Plaintiff does not have to pay…"

37. On October 28, 2020, Judge Gardiner found that Respondent "willfully, knowingly, and without justification" failed to appear on August 20, 2020. He found Respondent in contempt of court for failing to appear and sentenced him to one day in jail with credit for time served. VSB Ex. 90.

38. On November 10, 2020, as recounted in Judge Gardiner's January 8, 2021 Motion to Dismiss Under Rules 12(b)(2), 12(b)(4), and 12(b)(5), Respondent attempted to serve Judge Gardiner with a summons in which he crossed out the name Michael and inserted Richard, still leaving the last name of "Gardner" misspelled. VSB Exs. 92 and 93.

39. On December 29, 2020, despite not correctly naming Judge Gardiner in his attempted service, Respondent filed a Request for Entry of Default in the EDVA

10

alleging that Judge Gardiner failed to plead or otherwise defend as provided by Rule 55(a) of the Federal Rules of Civil Procedure. VSB Ex. 91.

40. On January 8, 2021, Judge Gardiner, represented by Assistant Attorney General Sheri Kelly, filed a Motion to Dismiss in the EDVA, based on Respondent's failure to properly serve Judge Gardiner and a resulting lack of personal jurisdiction.

41. Between January 11 and January 13, 2021, Respondent filed various pleadings in opposition to Motions to Dismiss filed by Judge Gardiner and Vaughn. On January 11, 2021, Respondent filed "Plaintiff's Motion to Strike and Motion for Sanctions Concerning Defendants' Motion to Dismiss for Failure to State a Claim with Included Memorandum of Law." Respondent sought Rule 11 sanctions and argued that he was wrongfully imprisoned in contravention of the Thirteenth Amendment. He stated:

- "The Defendants as seems to be their common tactic have responded to some other, mystery, fantasy, non-existent lawsuit that bears no resemblance to the lawsuit at bar here now. There are those who do not understand. There are those who do not understand."

- "The fact that Plaintiff Moseley spent his birthday in jail seems to be unable to penetrate the thick skull of these defendants in their imagined belief that if they merely commit enough vile, vicious terrorism, threat, and intimidation, somehow the Plaintiff will pay money he doesn't have."

- "Instead, as clearly alleged in the Complaint, these Defendants have spectacularly and steadfastly chosen to engage in terrorism, threats, and intimidation not warranted under State law to get people to pay what they are unable to pay. God only knows what they are doing to debtors who are not lawyers."

VSB Exs. 95-96.

42. In a Judgment Order dated January 14, 2021, Judge Gardiner ruled that the amount owed to Vaughn by Respondent in outstanding sanctions of attorney's fees should be consolidated into a single civil judgment in favor of Vaughn against Respondent.

## **NATURE OF MISCONDUCT**

For purposes of the misconduct stage of the proceedings, the Court only considered matters and exhibits up to February 3, 2021 when the Certification was issued

11

by the Fifth District, Section, III Subcommittee. Upon consideration of the witnesses' testimony, the exhibits, and arguments of counsel, the Court finds by clear and convincing evidence that Respondent's conduct constitutes misconduct in violation of the following provisions of the Rules of Professional Conduct:

**VSB Docket No. 19-053-114672**
**Complainant: Parvis Salehi**

Respondent violated Rule 1.15(a)(1) when he failed to deposit Parvis Salehi's check into an identifiable trust account.

RULE 1.15   Safekeeping Property

(a) Depositing Funds.

(1) All funds received or held by a lawyer or law firm on behalf of a client or a third party, or held by a lawyer as a fiduciary, other than reimbursement of advances for costs and expenses shall be deposited in one or more identifiable trust accounts; all other property held on behalf of a client should be placed in a safe deposit box or other place of safekeeping as soon as practicable.

***************

Respondent violated Rule 1.15(b)(3) when he failed to maintain complete records of all advanced Parvis Salehi funds received and disbursed from his non-trust Wells Fargo account.

(b) <u>Specific Duties.</u> A lawyer shall:

(3) maintain complete records of all funds, securities, and other properties of a client coming into the possession of the lawyer and render appropriate accountings to the client regarding them;

***************

Respondent violated Rule 1.15(b)(5) when he deposited Salehi's check for $1,250, prior to it being earned, into his non-trust Wells Fargo account, and spent those funds for his own purposes.

(5) not disburse funds or use property of a client or of a third party with a valid lien or assignment without their consent or convert funds or property of a client or third party, except as directed by a tribunal.

Respondent violated Rule 1.15(d)(2) when, after re-establishing a trust account at

12

SunTrust Bank, Respondent failed to deposit trust funds intact when he deposited client Wolff's check in the amount of $1,200 plus $50 cash.

(d) Required Trust Accounting Procedures. In addition to the requirements set forth in Rule 1.15 (a) through (c), the following minimum trust accounting procedures are applicable to all trust accounts.

(2) Deposits. All trust funds received shall be deposited intact. Mixed trust and non-trust funds shall be deposited intact into the trust fund and the non-trust portion shall be withdrawn upon the clearing of the mixed fund deposit instrument. All such deposits should include a detailed deposit slip or record that sufficiently identifies each item.

Respondent violated Rules 8.1(c) and (d) when he failed to fully respond to the subpoena duces tecum issued by the VSB and created false ledgers after the fact.

RULE 8.1      Bar Admission And Disciplinary Matters

An applicant for admission to the bar, or a lawyer already admitted to the bar, in connection with a bar admission application, any certification required to be filed as a condition of maintaining or renewing a license to practice law, or in connection with a disciplinary matter, shall not:

***************

(c) fail to respond to a lawful demand for information from an admissions or disciplinary authority, except that this Rule does not require disclosure of information otherwise protected by Rule 1.6; or

(d) obstruct a lawful investigation by an admissions or disciplinary authority.

Respondent violated Rule 8.4(b) when he converted Salehi's unearned funds by depositing them into his Wells Fargo non-trust account and spent them for his own purposes. Respondent also violated Rule 8.4(b) by creating false ledgers after the fact.

RULE 8.4     Misconduct

It is professional misconduct for a lawyer to:

(b) commit a criminal or deliberately wrongful act that reflects adversely on the lawyer's honesty, trustworthiness or fitness to practice law;

13

Respondent violated Rule 3.1 when he took a position in the Complaint filed in the EDVA that Judge Gardiner and Vaughn legally conspired to have him imprisoned for not paying a civil debt. The position lacked merit and was not a good faith argument for an extension, modification or reversal of existing law:

RULE 3.1 Meritorious Claims And Contentions

> A lawyer shall not bring or defend a proceeding, or assert or controvert an issue therein, unless there is a basis for doing so that is not frivolous, which includes a good faith argument for an extension, modification or reversal of existing law. A lawyer for the defendant in a criminal proceeding, or the respondent in a proceeding that could result in incarceration, may nevertheless so defend the proceeding as to require that every element of the case be established.

Respondent violated Rule 3.3(a)(1) when he made false statements, such as those set out in paragraphs 36 and 41 above, in his Complaint filed in the EDVA.

RULE 3.3 Candor Toward The Tribunal

(a) A lawyer shall not knowingly:

1) make a false statement of fact or law to a tribunal;

RULE 3.4 Fairness To Opposing Party And Counsel

Respondent violated Rule 3.4(d) when he failed to appear before Judge Gardiner as ordered on the August 20, 2020, thereby disregarding an order or standing rule of the Court.

> (d) Knowingly disobey or advise a client to disregard a standing rule or a ruling of a tribunal made in the course of a proceeding, but the lawyer may take steps, in good faith, to test the validity of such rule or ruling.

***************

Respondent violated Rule 3.4(j) when he filed suit against Judge Gardiner and Vaughn in the EDVA when he knew, or when it was obvious that such action would serve merely to harass or maliciously injure another.

> (j) File a suit, initiate criminal charges, assert a position, conduct a defense, delay a trial, or take other action on behalf of the client when the lawyer knows or when it is obvious that such action would serve merely to harass or maliciously injure another.

14

Respondent violated Rule 5.5(c) when he appeared at Calendar Control before Judge Mann on November 25, 2019, when his license to practice law was under an interim suspension.

RULE 5.5      Unauthorized Practice Of Law; Multijurisdictional Practice of Law

(c) A lawyer shall not practice law in a jurisdiction in violation of the regulation of the legal profession in that jurisdiction, or assist another in doing so.[2]

Respondent violated Rule 8.2 when he made false statements, such as those set out in paragraphs 36 and 41 above, about Judge Gardiner in Respondent's pleadings filed in the EDVA.

RULE 8.2      Judicial Officials

A lawyer shall not make a statement that the lawyer knows to be false or with reckless disregard as to its truth or falsity concerning the qualifications or integrity of a judge or other judicial officer.

## VSB Docket No. 20-053-117932
## Complainant: Virginia State Bar

The Court found that the VSB did not prove, by clear and convincing evidence, that Respondent violated any Rules of Professional Conduct in VSB Docket No. 20-053-117932.

## Sanctions Phase

The Court then proceeded to the sanctions phase of the proceeding. The VSB and Respondent presented opening statements.

The VSB called Respondent as an adverse witness. The Court also received VSB Ex. 112, Respondent's disciplinary history, VSB Ex. 113, an April 20, 2007 opinion of the Supreme Court of Virginia, *In Re: Jonathan A. Moseley*, (Record No. 061237), VSB Exhibit 114 with attachments A-P, Memorandum Opinion and Order, *Virginia State Bar Ex Rel Seventh District Committee v. Jonathan A. Moseley*, in the Circuit Court of

---

[2] The court found that Respondent appeared at Calendar Control on November 25, 2019 in violation of Rule 5.5(c). The court did not find that Respondent's November 20, 2019 appearance before Judge Gardiner violated Rule 5.5(c) by clear and convincing evidence.

15

Loudon County, (Case No. CL52390), VSB Ex. 115, an Order of the Supreme Court of Virginia, *In Re: Jonathon Alden Moseley*, (Record No. 092126), VSB Ex. 116, Partial Final Judgment on Cross-Claim, *In Re: SWPP Development Corporation v. Ticonedroga Farms, INC. et al.*, in the Circuit Court of Loudoun County, VSB Ex. 117, a November 3, 2021 Order to Show Cause by Judge Anthony Trenga in the EDVA, VSB Ex. 118, a November 5, 2021 Order by Judge Anthony Trenga in the EDVA, VSB Ex. 119, a December 8, 2021 Contempt Order by Judge Anthony Trenga in the EDVA. The VSB rested after presentation of this evidence.

Respondent testified on his own behalf and then rested.

Counsel for the VSB and Respondent presented argument regarding the sanctions to be imposed on Respondent for the misconduct found, and the Court recessed to deliberate.

## Determination

After due consideration of the evidence as to mitigation and aggravation and argument of counsel, the Court reconvened to announce its sanction of Revocation of Respondent's license, effective April 1, 2022.

Accordingly, it is hereby ORDERED that Respondent receive a Revocation of his license to practice law in the Commonwealth of Virginia, effective on April 1, 2022.

It is further ORDERED that Respondent must comply with the requirements of Part Six, Section IV, Paragraph 13-29 of the Rules of the Supreme Court of Virginia. Respondent shall forthwith give notice by certified mail, return receipt requested, of the Revocation of his license to practice law in the Commonwealth of Virginia, to all clients for whom he is currently handling matters and to all opposing attorneys and presiding

16

judges in pending litigation. Respondent shall also make appropriate arrangements for the disposition of matters then in his care in conformity with the wishes of his clients. Respondent shall give such notice immediately and in no event later than 14 days of the effective date of the revocation, and make such arrangements as are required herein as soon as practicable and in no event later than 45 days of the effective date of the Revocation. Respondent shall also furnish proof to the VSB within 60 days of the effective date of the Revocation that such notices have been timely given and such arrangements made for the disposition of matters.

It is further ORDERED that if Respondent is not handling any client matters on the effective date of the Revocation, he shall submit an affidavit to that effect to the Clerk of the Disciplinary System of the VSB. All issues concerning the adequacy of the notice and arrangements required by Paragraph 13-29 shall be determined by the VSB Disciplinary Board.

It is further ORDERED that the Clerk shall send a copy teste of this Memorandum Order to Respondent, Jonathon A. Moseley, by certified mail, return receipt requested, to Jonathon Alden Moseley, Esq., 5765-F Burke Centre Parkway, #337 Burke, VA 22015, his address of record with the VSB; to the Honorable DaVida M. Davis, Clerk of the Disciplinary System, Virginia State Bar, 1111 E. Main Street, Suite 700, Richmond, VA 23219, and to Laura Ann Booberg, Assistant Bar Counsel, Virginia State Bar, 1111 E. Main Street, Suite 700, Richmond, VA 23219.

The hearing was recorded by Katherine Elias on March 31, 2022 and by Melissa S. Alberts on April 1, 2022, Rudiger, Green & Kerns Reporting Service, 4116 Leonard Drive, Fairfax, Virginia 22030, telephone: 703-591-3136.

17

ENTERED: 5/13/2022

_____
The Honorable Retired Susan L. Whitlock
Chief Judge of the Three Judge Panel

_____
The Honorable Richard S. Wallerstein, Jr.

_____
The Honorable Phillip L. Hairston

I ask for this:

VIRGINIA STATE BAR

By: _____
Laura Ann Booberg, Assistant Bar Counsel
VSB No. 34508
Virginia State Bar
1111 East Main Street, Suite 700
Richmond, VA 23219-3565
(804) 775-0561
booberg@vsb.org

SEEN AND _____:

By:_____
Jonathon A. Moseley
VSB No. 41058
Jonathon Alden Moseley, Esq.
5765-F Burke Centre Parkway, #337
Burke, VA 22015
(703) 656-1230
contact@jonmoseley.com

*Endorsement dispensed with as Defendant did not respond with endorsement when order was provided to him prior to entry.*

*S.Ct. Rule 1:13*

18